

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) ) ) | |
| RALPH BERNAL, JR. and EULALIA PUENTES, | ) ) ) | CASE NO. 11-35691-H3-13 |
| Debtors | ) ) | |
| RALPH BERNAL, JR. and EULALIA PUENTES, | ) ) ) | ADVERSARY NO. 11-3633 |
| Plaintiffs | ) ) | |
| versus | ) ) | |
| CHARLES SHINALL, | ) ) | |
| Defendant | ) ) | |

MEMORANDUM OPINION

The court held a trial on the Complaint to determine the value of the interest of Charles Shinall, Defendant, in the residential real estate of Ralph Bernal, Jr. and Eulalia Puentes, Plaintiffs, and to determine whether the allowed claim of Defendant is secured. After review of the file, pleadings, testimony, evidence and argument of counsel, the court determines that the allowed claim of the Defendant is unsecured. The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered simultaneously with this Memorandum Opinion. To the extent any of the Findings of Fact are considered Conclusions of Law, they

are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

## Findings of Fact

1. Debtors filed a voluntary Chapter 13 petition on July 2, 2011. Debtors listed the real property located at 1202 Whitestone Lane, Houston, Texas 77073 in Schedule A with a value, on the date of filing, of $136,314.00.

2. Bank of America has a first lien on the real property in the approximate amount of $140,133.93. The Deed of Trust, dated September 15, 2004, reflects that the principal amount owed on the note was $128,000. Plaintiffs' Exhibit B. Charles Shinell, Defendant, holds a second lien on the real property in the approximate amount of $48,155.93. The Deed of Trust, dated September 15, 2004, reflects that the principal amount owed on the note was $32,000. Proof of Claim No. 24, Claims Register.

3. Plaintiffs request that the court determine that the value of the interest of Charles Shinall, Defendant, in the real property is zero and as such, Defendant's allowed claim against the bankruptcy estate is unsecured. Defendant disputes Plaintiffs' contentions and asserts that equity exists in the property.

4. Ralph Bernal, Jr. testified that he purchased the property as a "fixer upper" in September of 2004 for $160,000. Bernal testified that, at the time that he bought the property,

he looked at the comparable sales in the area which were around $130,000.[1] He testified that he valued the property in his bankruptcy schedules at $136,314.00 which was based upon the value attributed to the property by the Harris County Appraisal District for the tax years of 2011 and 2012. Plaintiffs' Exhibit A. He testified that he also recently looked at real property values in his neighborhood and found that the values are down. Bernal testified that the property value for his property is even lower than the value listed in his schedules because it is in need of a lot of repairs.

5. Bernal testified that his Home Owners Association threatened to sue him because of the condition of the outside of the home. He testified that he had to replace decayed areas and wood on the outside. Bernal testified that the home is in need of window replacements, painting, carpeting, bathroom updates, and irrigation work as the patio floods. Bernal testified that he owes Bank of America over $140,000. He testified that no equity exists in the property. The court found Bernal to be a credible witness.

6. The court notes that Defendant listed the value of the real property at $136,314.00 on his proof of claim. Proof of Claim No. 24, Claims Register. Although the value placed on the

---

[1] No evidence was submitted to explain why the purchase price paid by the Debtor for the real property was greater than the comparables or why the first and second liens on the real property were executed on the same date.

real property by the Appraisal District and the proof of claim filed by Bank of America are not conclusive as to the property's value, Defendant did not present any evidence disputing these values or Bernal's testimony.

7.  The court finds that the value of the property is less than the amount that Debtor owes to Bank of America.  As such, Defendant has no secured interest in the real property.  The court finds that the allowed claim of the Defendant is unsecured.

## Conclusions of Law

1.  Section 506(a) provides that an allowed claim is a secured claim only to the extent "of the value of such creditor's interest in the estate's interest in property..."  The secured creditor's claim is limited to the market value of the collateral to which the lien is attached.

2.  Section 1322(b) limits the availability of section 506(a) to bifurcate claims secured only by a mortgage lien or security interest in the debtor's principal residence and provides that a chapter 13 plan may not modify the rights of the holder of this type of claim.  However, this prohibition is subject to exceptions.

3.  The antimodification provisions do not protect secondary lienholders whose interest is not supported by at least some value in the debtor's principal residence.  If a lien is wholly undersecured because more senior liens equal or exceed the

value of the collateral, the lien may be stripped off with the claim treated as an allowed unsecured claim. *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277 (5th Cir. 2000).

    4. Pursuant to section 506(a), the court considers the purpose of the valuation and the proposed disposition of the collateral. The purpose of the valuation in this case is to determine how much the Debtor has to pay the secured creditor in order to confirm the plan in accordance with 11 U.S.C. § 1325(a)(5). The proposed disposition is the debtor's continued retention and use of the home in order to be able to fund the plan. See 4 *Collier on Bankruptcy* ¶ 506.03[7] (Alan N. Resnick & Henry J. Sommer eds. 16th ed.) and cases cited therein.

    5. The appropriate method of valuation is the hypothetical purchase method, defined as replacement value measured at what the debtor must pay for like property of the same condition and age. *See Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). The Supreme Court did not specify particulars:

> Our recognition that the replacement-value standard, not the foreclosure-value standard, governs in cram down cases leaves to the bankruptcy courts, as triers of fact, identification of the best way of ascertaining replacement value on the basis of the evidence presented. Whether replacement value is the equivalent of retail value, wholesale value, or some other value will depend on the type of debtor and the nature of the property.

*Associates Commercial Corp. v. Rash*, 520 U.S. 953, 965, 117 S.Ct.

1879, 1886 n.6, 138 L.Ed.2d 148, 160 (1997).

      6.   Determinations of value in the bankruptcy context do not rise to the level of "mathematical certitude." *Consolidated Rock Prods. Co., v. Du Bois*, 312 U.S. 510, 526, 61 S.Ct. 675, 85 L.Ed. 982 (1941). Even when opined upon by experts, valuation determinations often "depend on assumptions, predictions, and, to some extent, speculation." *See In re EFH Grove Tower Assocs.*, 105 B.R. 310, 314 (Bankr. E.D.N.C. 1989); *see also In re Simmons*, 113 B.R. 942, 947 (Bankr. W.D.Tex. 1990).

      Based upon the above Findings of Fact and Conclusions of Law, a separate Judgment will be entered declaring that the allowed claim of the Defendant is unsecured.

      Signed at Houston, Texas on this 4th day of June, 2012.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE